IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY DEAN DIXON, III,

    Petitioner,                       No. 2:10-cv-3030 GEB KJN P

    vs.

MIKE McDONALD, Warden,

    Respondent.                    FINDINGS AND RECOMMENDATIONS

                                /

I. Introduction

          Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2008 conviction on charges of first degree murder with true findings that petitioner personally used a firearm causing great bodily injury.  Petitioner was sentenced to 50 years to life in prison.  Petitioner raises three claims related to alleged juror misconduct, and one claim of ineffective assistance of trial counsel based on counsel's failure to move for disclosure of juror identifying information.  After careful review of the record, this court recommends that the petition be denied.

II. Procedural History

          Petitioner filed a timely appeal to the California Court of Appeal, Third Appellate District.  The judgment was affirmed by the Court of Appeal on May 14, 2010.  (Lodged

1  Document ("LD") C.)  Petitioner filed a petition for review in the California Supreme Court.

2  (LD D.)  The California Supreme Court denied review on September 1, 2010.  (LD E.)

3  Petitioner filed the instant petition on November 10, 2010.  (Dkt. No. 1.)

4  III.  Facts[1]

5  The opinion of the California Court of Appeal contains a factual summary of

6  petitioner's offenses.

> On September 6, 2006, at around 7:13 a.m., two school-aged children discovered the body of John Dills.  Dills was dead, having sustained three gunshot wounds to the upper torso and chest, two wounds to the left ear area, a wound on the left temple, and a wound on the outer part of the left hand.
>
> Freeman Kellison knew [petitioner] since they were children.  In September 2006, [petitioner], Kellison, and Dills worked on three-wheelers and took drugs together.  [Petitioner] often stayed at Kellison's home during this time.
>
> [Petitioner] and Dills stayed with Kellison at his grandmother's house on the evening of September 4, 2006.  Kellison was afraid that night and borrowed a .22-caliber handgun from his grandmother.  Kellison was uncomfortable with handguns, so he gave the weapon to [petitioner], a hunter familiar with guns.  Dills was afraid for his safety, constantly expressing his desire to get out of California.  Kellison offered to help by buying him a bus ticket.
>
> The following day, the trio picked up some of Dills's clothing from the home where his father was staying.  They eventually returned to Kellison's grandmother's house, where Kellison and [petitioner] obtained her permission to let Dills sleep there that night.  However, Dills had fallen asleep in the car, where he was left for the night.
>
> Kellison got his grandmother's handgun again and gave it to [petitioner].  [Petitioner] told Kellison he suspected Dills of being a child molester, and the two discussed whether this was why Dills wanted to leave California.  [Petitioner] suggested killing Dills as a way to take care of this situation.  Kellison said this was none of their business, but [petitioner] retorted, "what if [Dills] raped your grandmother?"

////

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Dixon, No. C060356 (May 14, 2010).  (LD C.)

2

1
2
3
4

Kellison decided to go to the hospital to treat a spider bite on his knee. He and [petitioner] got into the car, which still contained the sleeping Dills. However, Kellison drove in the opposite direction as [petitioner] directed him to a place where they could buy marijuana. The person with the marijuana was not home, so Kellison drove back towards the hospital.

5
6
7

After Dills woke up in the backseat, [petitioner] asked him to reach down and pick up a bag of [petitioner's] belongings off the floor. [Petitioner] then turned around and shot Dills twice, causing him to slump down. Kellison slowed the car down, but [petitioner] shot Dills again before the car stopped.

8
9
10

Once the car stopped, [petitioner] and Kellison got out. Kellison pulled Dills's body out of the car, laid his own shirt over the torso, and dumped Dills on the side of the road before driving back to his grandmother's house with [petitioner]. He also took the gun from [petitioner] and put it away.

11
12
13

Kellison was serving a prison term after pleading guilty to a manslaughter charge, and was scheduled to be released about a year after the date of his testimony. He had previously been arrested for stealing the ingredients for methamphetamine from a K-Mart; he also had a recipe for methamphetamine in his possession when he was arrested.

14
15
16

Kellison's grandmother testified she owned the .22-caliber Ruger semiautomatic pistol used to kill Dills. The pistol was found in a search of her house, which also discovered a bloody wig folded over a citation issued to Dills and an empty box for .22-caliber rounds.

17
18
19
20

[Petitioner] was interviewed by a Butte County Sheriff's deputy. He admitted shooting Dills, but claimed it was an accident. [Petitioner] said the first shot went off accidentally while he was playing with the gun and the car hit a bump. Dills was shot in the neck and was suffering, so [petitioner] shot Dills many times, like a hunter putting a wounded animal out of its misery. He admitted shooting Dills four or five times, including once in the head.

21
22
23

[Petitioner] did not like Dills; he thought Dills was a thief and a child molester. When [petitioner] got into the car, he thought Dills might die. [Petitioner] admitted using methamphetamine at the time of the shooting.

24
25
26

Peter Barnett testified as an expert criminalist for the defense. He thought that the position of the bloodstain in Kellison's car and the direction of the gunshots on the body indicated that Dills was shot from the driver's side rather than from the passenger side of the front seat. However, he admitted it was possible that Dills was shot from the passenger side and slumped over before being shot again.

(People v. Dixon, LD C at 1-4.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). If there is no reasoned decision, "and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S. Ct. at 784-85. That presumption may be overcome by a showing that "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

V. Petitioner's Claims

    A. Alleged Juror Misconduct

Petitioner contends the trial court abused its discretion when it rejected petitioner's request for an evidentiary hearing into juror misconduct, because "a Griffin error is reversible error if proven." (Dkt. No. 1 at 19, citing Griffin v. California, 380 U.S. 609, 611-12 (1965), and Killian v. Poole, 282 F.3d 1204 (9th Cir. 2002).) Petitioner also argues that the trial court abused its discretion when it discounted the allegations of misconduct by Juror C.S. based on inferences not supported by the evidence. Petitioner claims that the jury committed misconduct when they considered, during jury deliberations, petitioner's Fifth Amendment right to remain silent.

Respondent counters that the state court properly found that there was no evidence that petitioner's failure to testify influenced the jury's verdict, and therefore the denial of the motion for evidentiary hearing was proper, and the rejection of petitioner's claims was not

1  contrary to any United States Supreme Court authority.

2      i. <u>Background</u>

3     On October 6, 2008, petitioner filed a motion for new trial. (Clerk's Transcript

4  ("CT") 354.) Petitioner appended a declaration from Juror C.S., a photocopy of a news article

5  about petitioner's case, and an "interoffice memorandum" from defense attorney Jason Reisinger

6  to petitioner's trial counsel Jesus Rodriguez. (CT 356, 365, 362.) Juror C.S. declared:

> I was a member of the jury that deliberated on the case of *People v. Anthony Dixon* in the Superior Court of California, County of Butte, from August 11 through August 13 of 2008. We reached a verdict on Wednesday, August 13, 2008.
>
> During the course of our deliberations, it became an issue that the [petitioner], Mr. Dixon, had not testified on his own behalf. Several jurors discussed Mr. Dixon's failure to testify and took it into consideration during our deliberations.
>
> Additionally, we had a difficult time putting the facts of the case together. It was unclear to us what had really happened. We thought there may have been a second gun and, perhaps, another shooter.

(CT 356.) The news article was titled "Gunman Convicted in Palermo Killing," written by Terry Vau Dell, staff writer, and "launched" on August 14, 2008, at 12:00 a.m. (CT 362.) The relevant portion of the article states:

> Following the verdict, the jury foreman told a reporter outside of court the [petitioner's] videotaped confession to sheriff's detectives the day after the murder was pivotal.
>
> "The fact also that he did not take the stand and say anything differently from his confession was also very important," the jury foreman added
>
> The jury foreman said his fellow jurors believed that although Dixon alone shot the victim, both he and Kellison were equally involved in planning and carrying out the teen's murder.
>
> "It was a mutual thing; personally I believe he (Kellison) was as guilty of pulling the trigger as Mr. Dixon," the Paradise juror said.

(CT 362.) Jason Reisinger, defense attorney and associate of petitioner's defense counsel, stated

6

in his September 18, 2008 interoffice memorandum, that:

> Today, I spoke with Chris Hatch, juror in the People v. Anthony Dixon, Butte County case no. CM025560. We met at his office at 9:00 a.m. and spoke for about 30 minutes about the case.
>
> Mr. Hatch described the process the jury went through during their deliberations. He stated that some alternative theories of the crime were discussed that had no basis in the evidence introduced at trial. He also stated that jurors discussed the fact that Mr. Dixon did not testify on his own behalf at trial during their deliberations.
>
> I asked Mr. Hatch if he would sign a declaration about the information he had shared with me, but he declined to do so.

(CT 365.)

The trial court heard petitioner's motion for new trial on October 7, 2008. (RT 504.) The prosecution objected to the timeliness of petitioner's motion, and argued that the documents provided by petitioner failed to meet the requirements of California Evidence Code § 1150.[2] (RT 504-05.) In response, defense counsel apologized for the late filing, noting he shared an investigator involved in a different murder trial, which made it difficult to "gather all the juror interviews that [he] wanted to gather prior to filing [the] motion." (RT 505.) Defense counsel noted that he had not had an opportunity to address each juror, and that there were jurors who were approached but who did not return telephone calls, which defense counsel took "as

---

[2] Section 1150 states:

> (a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined.
>
> (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict.

Id.

meaning that they do not wish to talk to us." (RT 505.) Defense counsel asked the court to grant the motion, but asked that in the alternative, the court grant an extension of time to allow both the prosecution and the defense to examine the remainder of the jurors. (RT 509.) The prosecution responded that her investigator spoke to the juror (name redacted) who denied "that he made these statements and denies the fact that the [petitioner] did not testify was ever discussed or was ever an issue." (RT 509.)

The trial court struck the interoffice memorandum and the newspaper article as hearsay. (RT 511.) As to Juror C.S.'s declaration, dated September 18, 2008, the trial court stated:

> [S]everal of the jurors['] statements are conclusionary and do not pass the requirements needed in Evidence Code Section 1150.
>
> The only objective testimony given the Court in this affidavit is the fact that the juror heard mention during the course of deliberations Mr. Dixon's failure to testify. The effect of that conversation would not be admissible. There appears to the Court to have been some discussion made by some unknown jurors during the course of the deliberations. There is no evidence to show that those discussions were in any way extensive, that they in any way were prejudicial to the [petitioner], and for that reason the motion is denied.

(RT 511-12.)

ii. State Court Opinion

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> On October 6, 2008, almost two months after the verdict and the day before sentencing, [petitioner] filed a motion for new trial based on juror misconduct. Attached to the motion was the declaration of Juror C.S., which stated: "During the course of our deliberations, it became an issue that the [petitioner], Mr. Dixon, had not testified on his own behalf. Several jurors discussed Mr. Dixon's failure to testify and took it into consideration during our deliberations. [¶] Additionally, we had a difficult time putting the facts of the case together. It was unclear to us what had really

8

happened. We thought there may have been a second gun and, perhaps, another shooter."

The motion contained two exhibits. The first was a newspaper article relating that the jury foreman thought [petitioner's] videotaped confession was pivotal, and quoted the foreman as saying, "The fact . . . that he did not take the stand and say anything differently from his confession was also very important." The other exhibit was a statement from a defense investigator, Jason Reisinger, relating his conversation with Juror C.H., who told him "that some alternative theories of the crime were discussed that had no basis in the evidence" and "that jurors discussed the fact that Mr. Dixon did not testify on his own behalf at trial during their deliberations." Reisinger asked Juror C.H. to sign a declaration regarding the conversation, but the juror declined.

[Petitioner's] motion argued that the jurors violated his Fifth Amendment right not to testify by considering his failure to take the stand, and this misconduct was prejudicial, mandating a new trial. During argument on the motion, defense counsel also argued that if the court was not ready to grant the motion, it could grant an extension so the prosecution and the defense could examine the remaining jurors.

The court struck the defense investigator's statements and the newspaper article as hearsay. It found the declaration of Juror C.S. did not satisfy Evidence Code section 1150 except for the statement that some jurors discussed [petitioner's] failure to testify. Regarding the jury's alleged discussion of [petitioner's] failure to testify, the court stated, "There is no evidence to show that those discussions were in any way extensive, that they in any way were prejudicial to the [petitioner], and for that reason the motion is denied."

On appeal, [petitioner] contends that the trial court abused its discretion because the misconduct related in Juror C.S.'s declaration was prejudicial and the allegations in the newspaper article and by the defense investigator raised an inference of misconduct which warranted an evidentiary hearing. He is mistaken.

"When a party seeks a new trial based upon jury misconduct, a court must undertake a three-step inquiry. The court must first determine whether the affidavits supporting the motion are admissible under Evidence Code section 1150, subdivision (a)." (People v. Von Villas (1992) 11 Cal.App.4th 175, 255.) "If the evidence is admissible, the court must then consider whether the facts establish misconduct. [Citation.] Finally, assuming misconduct, the court must determine whether the misconduct was prejudicial." (Ibid.) We will not disturb a trial court's denial of a motion for new trial unless the trial court unmistakably abused its

9

discretion.  (People v. Cox (1991) 53 Cal.3d 618, 694, disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.)

"'[W]hen a criminal defendant moves for a new trial based on allegations of jury misconduct, the trial court has discretion to conduct an evidentiary hearing to determine the truth of the allegations.  We stress, however, that the defendant is not entitled to such a hearing as a matter of right.  Rather, such a hearing should be held only when the trial court, in its discretion, concludes that an evidentiary hearing is necessary to resolve material, disputed issues of fact.' [Citation.]  Also, a hearing 'should be only held when the defense has come forward with evidence demonstrating a strong possibility that prejudicial misconduct has occurred.  Even upon such a showing, an evidentiary hearing will generally be unnecessary unless the parties' evidence presents a material conflict that can only be resolved at such a hearing.'"  (People v. Hardy (1992) 2 Cal.4th 86, 174, fn. omitted.)

The trial court correctly dismissed without further hearing the newspaper article and the defense investigator's statement.  "Normally, hearsay is not sufficient to trigger the court's duty to make further inquiries into a claim of juror misconduct."  (People v. Hayes (1999) 21 Cal.4th 1211, 1256.)  In Hayes, a defense investigator and defense counsel submitted unsworn statements that a juror told them some of the jurors had read newspaper accounts of the trial proceedings.  (Id. at p. 1253.)  Hayes presented no statement by the juror herself.  (Id. at p. 1256.)  The trial court denied the motion for a new trial without further inquiry into the claim of misconduct.  (Id. at p. 1255.)  The Supreme Court found no abuse of discretion in failing to conduct an evidentiary hearing.  (Id. at p. 1256.)

In People v. Carter (2003) 30 Cal.4th 1166, the Supreme Court repeated that hearsay is not sufficient to trigger the court's duty to conduct an evidentiary hearing and, revisiting its prior holding in Hayes, reminded us:  "We found no abuse of discretion in the trial court's denial of the new trial motion without a hearing, noting that the court was justified in according little, if any, credence to the hearsay assertions the juror would not verify."  (Id. at p. 1217.)  The Supreme Court also found no abuse of discretion in the denial of the new trial motion without an evidentiary hearing.  (Ibid.)  Since the allegations in both the newspaper article and the defense investigator's statement were hearsay, the trial court was under no obligation to investigate them further before denying the new trial motion.

The trial court's analysis of Juror C.S.'s declaration was also correct.  Evidence Code section 1150 bars consideration of evidence of a juror's thought process in a motion for new trial.

10

(People v. Steele (2002) 27 Cal.4th 1230, 1263-1264.)  The trial court properly applied this provision and dismissed the juror's allegations that the jury considered theories not supported by the evidence and had difficulty putting together the facts of the case.

Juror C.S.'s allegation that several jurors discussed [petitioner's] failure to testify is another matter.  "[E]vidence of a jury discussion on an improper topic [is] admissible as an 'overt act' provided the evidence is not directed at the subjective reasoning processes of the individual juror."  (People v. Perez (1992) 4 Cal.App.4th 893, 907 (Perez).)  A juror's declaration that the jury discussed defendant's failure to testify supports a finding of misconduct.  (People v. Leonard (2007) 40 Cal.4th 1370, 1424-1425 (Leonard); People v. Hord (1993) 15 Cal.App.4th 711, 721, 725 (Hord).)

The trial court did not dismiss this allegation out of hand, instead finding that the alleged misconduct was not prejudicial.  Whether juror misconduct is prejudicial is a mixed question of fact and law subject to the independent determination of the appellate court.  (Leonard, supra, 40 Cal.4th at p. 1425.)  "Although misconduct raises the presumption of prejudice '[t]he presumption of prejudice may be rebutted, inter alia, by a reviewing court's determination, upon examining the entire record, that there is no substantial likelihood that the complaining party suffered actual harm.'"  (Hord, supra, 15 Cal.App.4th at p. 725.)

Our Supreme Court has recognized the difficulty of controlling the minds and voices of 12 jurors who are humans rather than automatons:  "Not all comments by all jurors at all times will be logical, or even rational, or, strictly speaking, correct.  But such comments cannot impeach a unanimous verdict; a jury verdict is not so fragile. '. . . The jury system is an institution that is legally fundamental but also fundamentally human.  Jurors bring to their deliberations knowledge and beliefs about general matters of law and fact that find their source in everyday life and experience.  That they do so is one of the strengths of the jury system.  It is also one of its weaknesses:  it has the potential to undermine determinations that should be made exclusively on the evidence introduced by the parties and the instructions given by the court.  Such a weakness, however, must be tolerated.  "[I]t is an impossible standard to require . . . [the jury] to be a laboratory, completely sterilized and freed from any external factors."  [Citation.]  Moreover, under that "standard" few verdicts would be proof against challenge.'"  (People v. Riel (2000) 22 Cal.4th 1153, 1219.)

The allegation in Juror C.S.'s declaration does not state that the jurors considered [petitioner's] failure to testify as evidence of guilt, only that some jurors discussed the matter and took it into consideration.  "Transitory comments of wonderment and curiosity, although misconduct, are normally innocuous,

> particularly when a comment stands alone without any further discussion." (Hord, supra, 15 Cal.App.4th at pp. 727-728.)
>
> The instant case is distinguished from Perez, supra, 4 Cal.App.4th 893, where defense counsel unsuccessfully moved for funding to investigate possible juror misconduct based on a juror's statement that the jury based its decision of guilt on the fact that the defendant did not testify and that jurors mentioned this fact during deliberations. (Id. at p. 905.) The trial court "'assume[d] for the sake of argument that all 12 jurors would say that that discussion . . . took place,'" but the court believed such statements would be inadmissible. (Id. at p. 906.) The trial court denied a motion for new trial. (Ibid.) The appellate court vacated the judgment and remanded for further proceedings, stating the trial court envisioned the jury had explicitly or implicitly agreed to disregard the court's express instruction, and evidence of such an agreement would be admissible to impeach the verdict under Evidence Code section 1150 and would constitute jury misconduct. (Id. at p. 908.) The appellate court noted, however, the trial court should not assume what occurred but should put defendant to his proof. (Id. at p. 909.)
>
> While the jurors discussed [petitioner's] failure to take the stand, there was no evidence of an explicit or implicit agreement to consider it as evidence of his guilt, which distinguishes Perez. (Hord, supra, 15 Cal.App.4th at p. 726.) "Where the misconduct is not 'inherently likely' to have affected the vote of any of the jurors, prejudice is not shown." (Id. at p. 727.) Lacking any evidence that [petitioner's] failure to testify influenced the jury's verdict, the trial court correctly concluded that [petitioner] was not prejudiced by the misconduct.

(People v. Dixon, LD C at 5-12.)

### iii. Legal Standards

State criminal defendants have a federal constitutional right to a fair and impartial jury. See Duncan v. Louisiana, 391 U.S. 145, 149 (1968) (Sixth Amendment right to jury trial); Estrada v. Scribner, 512 F.3d 1227, 1239 (9th Cir. 2008) (Sixth Amendment guarantees criminal defendants verdict by impartial, indifferent jurors) (citation omitted), cert. denied, 128 S. Ct. 2971 (2008). Due process requires that a criminal defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." Smith v. Phillips, 455 U.S. 209, 217 (1982).

In reviewing a claim of juror misconduct, "[t]he test is whether or not the

12

misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394, 396 (9th Cir. 1974). Thus, allegations of juror misconduct are cognizable federal habeas claims to the extent a petitioner is arguing that he was denied a fair trial. See Jeffries v. Blodgett, 5 F.3d 1180, 1189 (9th Cir. 1993) (finding that question on habeas review is whether juror misconduct deprived defendant of his or her right to fair trial). "To obtain relief, petitioners must now show that the alleged error" 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 1190 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637-39 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

      iv. Application

First, petitioner's argument that the trial court should have held an evidentiary hearing because a Griffin error is reversible is unavailing. Petitioner's reliance on Griffin and Killian is misplaced because these cases do not support the proposition that a criminal defendant's right against self-incrimination is violated by alleged jury misconduct, or that an evidentiary hearing is required under the instant circumstances. Rather, Griffin pertains to prosecutorial misconduct in commenting on a defendant's failure to testify. Griffin, 380 U.S. at 612-14. Killian pertains to prosecutorial misconduct in commenting on a defendant becoming silent upon arrest. Killian, 282 F.3d at 1211. Petitioner has failed to identify clearly established Supreme Court authority supporting the proposition that due process or the right to a fair trial requires a state trial court to provide criminal defendants with juror identifying information or to hold a hearing on a motion for disclosure of such information. See, e.g., Tracey v. Palmateer, 341 F.3d 1037, 1045 (9th Cir. 2003), cert. denied, 543 U.S. 864 (2004) ("Clearly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time a claim of juror bias [or misconduct] is raised.").

"Under California law, a defendant is entitled to a hearing to obtain juror identifying information only if he first presents a petition that establishes good cause for the

information." Feiger v. Hickman, 2008 WL 1787416, at *7 (S.D. Cal. Apr. 16, 2008) (citing Cal. Civ. Proc. Code § 237 and People v. Jefflo, 63 Cal. App. 4th 1314, 1318-23, n.8, 74 Cal. Rptr. 2d 622 (1998)). But the court does not need to set the matter for a hearing if the petition and declaration fail to establish a prima facie showing of good cause for the release of juror information or if there exists "a compelling interest against disclosure." Cal. Civ. Proc. Code § 237(b).[3] "To establish good cause a defendant must set forth a sufficient showing to support a reasonable belief that jury misconduct occurred." Feiger, 2008 WL 1787416, at *7 (citations omitted).

However, federal habeas corpus relief "does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Estelle v. McGuire, 502 U.S. 62, 67 (1991). "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984). Petitioner's claim alleging the trial court failed to hold an evidentiary hearing is an alleged claim of state law error, not cognizable on habeas review.

Petitioner's claim that the trial court abused its discretion when it discounted the allegations of misconduct by Juror C.S. based on inferences not supported by the evidence, is similarly unavailing. A state court's evidentiary ruling is not subject to federal habeas review

---

[3] Section 237(b) provides:

> Any person may petition the court for access to these records. The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration establish a prima facie showing of good cause for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm. If the court does not set the matter for hearing, the court shall by minute order set forth the reasons and make express findings either of a lack of a prima facie showing of good cause or the presence of a compelling interest against disclosure.

Id.

unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision, or by depriving the defendant of the fundamentally fair trial guaranteed by due process. See Pulley, 465 U.S. at 41; Jammal v. Van De Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991).

But even if the state trial court erred in failing to hold an evidentiary hearing or in denying petitioner's motion for new trial, such error was harmless because pursuant to Federal Rule of Evidence 606(b), evidence that one or more jurors considered petitioner's failure to testify at trial during their deliberations was inadmissible to impeach petitioner's verdict in his motion for a new trial.[4] Fed. R. Evid. 606(b); United States v. Rutherford, 371 F.3d 634, 639-40 (9th Cir. 2004).[5] In other words, petitioner's failure to testify in his own defense is not extrinsic evidence. Raley v. Ylst, 470 F.3d 792, 803 (9th Cir. 2006) (internal citation omitted). In Raley, the Ninth Circuit found that the jury's discussion of "constitutionally forbidden topics," including a defendant's failure to testify, did not amount to a due process violation as it was not extrinsic evidence. Id. at 803. Thus, petitioner's reliance on Remmer v. United States, 347 U.S. 227, 229 (1954), in connection with petitioner's claim that the trial court abused its discretion is also unavailing. In Remmer, an unnamed person communicated with a juror, which was extraneous or outside influence on the jury. Id. Here, as noted above, petitioner's failure to take the stand is

---

[4] The Federal Rules of Evidence apply to habeas corpus proceedings to the extent that the habeas statutes themselves provide no different rule of evidence. Fed. R. Evid. 1101(e). There is no habeas evidentiary rule on the subject.

[5] Rule 606(b) of the Federal Rules of Evidence bars a juror's testimony "as to 'any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.' There are two exceptions: a juror may testify as to whether (1) 'extraneous prejudicial information was improperly brought to the jury's attention' or (2) whether 'any outside influence was improperly brought to bear upon any juror.' . . . Here, . . . the jurors learned of Mrs. Rutherford's failure to testify through their personal observations during trial, not through a prohibited route or improper ex parte contact. Under these circumstances, the district court did not err in concluding that testimony regarding Mrs. Rutherford's absence from the witness stand is inadmissible under Rule 606(b) because . . . it does not concern facts bearing on extraneous or outside influences on the deliberation." Rutherford, 371 F.3d at 639-40.

not extrinsic evidence.  Raley, 470 F.3d at 803.

Moreover, even assuming that the jury discussed petitioner's failure to testify, petitioner must show that the alleged error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'"  Jeffries, 5 F.3d at 1190 (quoting Brecht, 507 U.S. at 637).  The testimony adduced at trial reasonably supports a conclusion that any jury misconduct regarding the discussion of petitioner's failure to testify did not affect the verdict.  Freeman Kellison testified that petitioner "suggested that a way to take care of the situation would be to kill John [Dill]."  (Reporter's Transcript ("RT") 192.)  Kellison testified petitioner "said the guy [Dill] needed to be shot."  (RT 193.)  Kellison also testified petitioner unexpectedly shot Dill while Kellison was driving the vehicle.  (RT 201-02.)  Moreover, petitioner admitted to Butte County Sheriff's Deputies that he shot the victim.  (Clerk's Supp. Transcript at 6.)  Deputy Sheriff Denny Lewis testified that he interviewed petitioner on September 6, 2006, during which petitioner admitted shooting John Dill, and admitted talking to Kellison about shooting John Dill earlier on the day of the shooting.  (RT 318, 323-24.)  Deputy Sheriff Lewis also testified that petitioner told Lewis that after petitioner shot Dill, it looked like Dill was suffering--referring to hunting animals and fishing--and that petitioner shot Dill in the head to "put him out of his misery."  (RT 325-26.)  Finally, Deputy Sheriff William Olive testified that Freeman Kellison told him that petitioner shot John Dill, and admitted discussing shooting John Dill earlier on the day of the actual shooting.  Given this damaging testimony, petitioner is unable to show that the alleged juror misconduct had an injurious effect or influence on the verdict.

For all of the above reasons, petitioner failed to show that the alleged juror misconduct deprived petitioner of a fair trial.  The state court's rejection of petitioner's claims alleging juror misconduct was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent.  Therefore, petitioner's first claim for relief should be denied.

////

B.  Alleged Ineffective Assistance of Counsel

Petitioner claims that he suffered ineffective assistance of trial counsel based on counsel's failure to move for disclosure of juror identifying information pursuant to California Civil Code § 237.  Petitioner also argues that he was prejudiced by defense counsel's lack of diligence and delay in filing the motion for a new trial.  Respondent counters that the state court reasonably denied this claim because the record does not reflect that defense counsel had any difficulty contacting and interviewing jurors.  In reply, petitioner argues that defense counsel's delay in filing the motion for a new trial, and failure to quickly pursue the juror's identifying information was ineffective because it led the court to deny the motion based on untimeliness.  (Dkt. No. 21 at 7)

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed this claim as follows:

> [Petitioner's] final contention is trial counsel was ineffective for failing to file the new trial motion earlier and for inadequately presenting the motion. We disagree.
>
> "'[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] . . . [Citation.]  Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'"  (In re Avena (1996) 12 Cal.4th 694, 721.)
>
> The relative lateness of the new trial motion was not a reason for its failure at trial or on appeal.  Since [petitioner] was not prejudiced by the timing of the motion, we reject his allegation that the late filing constituted ineffective assistance.
>
> [Petitioner] also argues that trial counsel had two options to better present his motion:
>
> A.
> [Petitioner] claims counsel should have moved for disclosure of

> the jurors' identifying information pursuant to Code of Civil Procedure section 237, relying on Juror C.S.'s declaration. However, nothing in the record indicates that defense counsel had problems interviewing jurors. Indeed, the new trial motion shows that the defense was able to contact at least two of the jurors, Juror C.S. and the jury foreman. Counsel also told the trial court that he had not addressed each juror, as several jurors contacted by the defense had not returned phone calls.
>
> [Petitioner] claims a motion to disclose would serve two functions: timely informing the court of juror misconduct and alerting "the court to the fact that counsel needed the assistance of the court to complete the investigation." Neither reason justifies filing a motion to compel juror information when the defense can already contact jurors. A motion for continuance is a better vehicle for informing the court of the need for further investigation, and defense counsel already invited the court to assist it in contacting the jurors who had not returned the defense's phone calls. As we have already determined, [petitioner's] allegations of juror misconduct were insufficient to warrant an evidentiary hearing. Likewise, a continuance for more investigation of these allegations would have been improper. "Counsel's failure to make a futile or unmeritorious motion or request is not ineffective assistance." (People v. Szadziewicz (2008) 161 Cal.App.4th 823, 836.)

(People v. Dixon, LD C at 12-14.)

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). The Court need not address both components if Petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697.

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted). Additionally, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

Contrary to petitioner's claim that the trial court denied the motion as untimely, the trial court denied the motion based on California Code of Civil Procedure § 1150, and by evaluating the objective statement of Juror C.S., ultimately finding no prejudice to petitioner. (RT 511-12.) Petitioner failed to demonstrate that had defense counsel filed the motion for new trial earlier, that the trial court would have granted petitioner's motion for new trial.

Similarly, petitioner failed to show that a motion to release juror's identifying information would have succeeded. Indeed, the record demonstrates that defense counsel was able to contact numerous jurors without filing such a motion. Jurors C.S. and C.H. were successfully contacted, as evidenced by the documents produced in connection with the motion for new trial. Defense counsel also informed the court that other jurors were approached but had not returned telephone calls. (RT 505.)

Petitioner argues that he was prejudiced by defense counsel's lack of diligence, but fails to demonstrate that the outcome would have been different if defense counsel were more diligent. Indeed, given the testimony adduced at trial, including petitioner's taped confession, this court cannot find that but for defense counsel's alleged ineffectiveness, the outcome of these proceedings would have been different. The state court's rejection of petitioner's second claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of

United States Supreme Court precedent. Therefore, petitioner's second claim for relief should also be denied.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 20, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

dixo3030.157